UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| **KHALED GHORAB** | **CASE NO. 2:19-CV-00718** |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| **DONNIE P** | **MAGISTRATE JUDGE KAY** |

MEMORANDUM RULING

Before the Court is Plaintiffs' Motion for Partial Summary Judgment on the Issue of Liability on Main Demand (Doc. 59), wherein Plaintiffs Khaled Ghorab, M.D. and Ghorab Surgical, LLC, move the Court to rule on the issue of whether Donnie P's alleged non-disclosure of highly material facts regarding the business and prospects of the limited liability company interest ("LLC") he sold to Dr. Ghorab results in civil liability under Louisiana Revised Statutes sections 51:701, *et seq*. Defendant Donnie Pecantte's ("Donnie P") opposes the motion. Doc. 75. Plaintiffs have replied. Doc. 84.

I. BACKGROUND

This action involves the February 19, 2019 sale of a member-managed limited liability company, A Plus Family and Community Services, LLC, ("A Plus"), wherein Plaintiffs seek rescission of a contract because Defendants, Donnie P and brother Omar P, failed to fully disclose material financial information regarding the business. Doc. 1. Plaintiffs also seek damages and attorney's fees for breach of contract, violations of the Louisiana Blue Sky Law, Louisiana Revised Statutes sections 51:701, *et seq*, and the Securities Act of 1933. *Id.*

A Plus was an out-patient behavioral health clinic that provided counseling and treatment services to Medicaid patients. Doc. 1, p. 1. During the relevant time period, A Plus's primary source of revenue was derived from providing psychosocial therapy services, and/or treatment to Medicaid recipients/patients and billing the health insurance providers for same, namely, Louisiana Healthcare Connections, Amerihealth, and Healthy Blue. *Id.*

Plaintiffs allege that shortly after Dr. Ghorab assumed management of A Plus, he discovered that the business and prospects of A Plus had been grossly misrepresented. *Id.* at 4. Dr. Ghorab discovered that the three insurance providers had either been terminated as sources of income, and/or were in jeopardy of being terminated as sources of income because A Plus failed to obtain the accreditation required by the Louisiana Department of Health pursuant to Louisiana Revised Statute 40:2162. *Id.* at 9–10. As such, Dr. Ghorab alleges that Donnie P failed to make full disclosure and made fraudulent misstatements of fact and omissions of material facts. *Id.* at 11. To be sure, Dr. Ghorab alleges that these three insurance providers were A-Plus's sole source of income. *Id.* at 12.

On December 14, 2022, a First Amended, Supplemental and Restated Complaint (Doc. 61) was filed by Ghorab, adding Ghorab Surgical Associates ("GSA") as a Plaintiff and Omar P as a Defendant. On December 20, 2022, the trial date was cancelled without date. The Amended Complaint asserts that Donnie P allegedly solicited the purchase of the Company by Plaintiffs through the use of material misstatements and omissions of fact and alleges that purchase by Plaintiffs of the membership interests in the Company allegedly

constitutes the purchase and sale of "securities" under federal and state securities laws. *Id.* at 4.

The Amended Complaint alleges claims by Plaintiffs against Defendants premised on the Louisiana Blue Sky Laws, La. R.S. 51:701, *et seq.* (Count One of the Amended Complaint); Rescission of Contract on the basis of fraud, Louisiana Civil Code Article 1953, and nullity (Count Three of the Amended Complaint); and for Breach of Contract (Count Four of the Amended Complaint). *Id.* at 19–21. Count Two of the Amended Complaint asserts alleged claims against Donnie P only based on purported violations of Section 12(2) of the Securities Act of 1933, 15 USC 77a, *et seq. Id.* at 20. Currently pending but not before the court are the following motions: Motion for Summary Judgment by Donnie P (Doc. 54); Motion for Summary Judgment by Plaintiffs (Doc. 58); Motion for Partial Summary Judgment as to Liability on the Main Demand by Plaintiffs (Doc. 59); and a Rule 12(b)(6) Motion by Omar P (Doc. 71). Bench trial set for March 11, 2024, at 9:00 AM. Doc. 93.

## II.  LEGAL STANDARD

A court should grant a motion for summary judgment when the movant shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. The party moving for summary judgment is initially responsible for identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). The court must deny the motion for summary judgment if the movant fails to meet this burden. *Id*.

If the movant makes this showing, however, the burden then shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (quotations omitted). This requires more than mere allegations or denials of the adverse party's pleadings. Instead, the nonmovant must submit "significant probative evidence" in support of his claim. *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted). The Court is not required to search the record for material fact issues. *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010).

A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The court is also required to view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000). Under this standard, a genuine issue of material fact exists if a reasonable trier of fact could render a verdict for the nonmoving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

### III. LAW & ANALYSIS

This Motion involves only Plaintiffs' claims under Sections 51:701, *et seq.*, which are referred to as Louisiana Blue Sky Law or Louisiana Securities Law. La. R.S. §§ 51:701, *et seq*. Thereunder,

> [t]o offer to sell or to sell a **security**[1] by means of any oral or written untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, the buyer not knowing of the untruth or omission, if such person in the exercise of reasonable care could not have known of the untruth or omission.

La. R.S. § 51:712(A)(2) (2023) (emphasis added). "Any person who violates R.S. 51:712(A) shall be liable to the person buying such security . . . ." La. R.S. § 51:714(A) (2023). Plaintiffs ask the Court to rule on the issue of the liability of the Seller, Donnie P, under Sections 51:701, *et seq*. Doc. 59-1, p. 6. Plaintiffs claim that A Plus had lost 100% of its sources of revenue in the ninety-day period prior to the sale because of lack of accreditation from regulatory and oversight authorities. *Id.* Furthermore, Plaintiffs claim that this information was not disclosed to Plaintiffs. *Id.* Donnie P, however, claims that Sections 51:701, *et seq*. do not apply to the sale of A Plus. Doc. 75, p. 24.

Specifically, Plaintiffs' Motion for Partial Summary Judgment seeks a determination and judgment that Donnie P is liable to Plaintiffs as the "seller" of a security under Section 51:712(A)(2). Plaintiffs contend that "[i]t is well settled law that limited liability company interests in this context meet the seminal "investment contract" test first set forth by the United States Supreme Court in *U.S. v. W.J. Howey Co.*, 328 U.S. 293

---

[1] "Security" means any note; stock; treasury stock; bond; debenture; evidence of indebtedness; certificate of interest or participation in any profit-sharing agreement; collateral-trust certificate; preorganization certificate or subscription; transferable share; **investment contract**; voting-trust certificate; certificate of deposit for a security; fractional undivided interest in oil, gas, or other mineral rights; any put, call, straddle, option, or privilege on any security, certificate of deposit, or group or index of securities (including any interest therein or based on the value thereof); or, in general, any interest or instrument commonly known as a "security"; or any certificate of interest or participation in, temporary or interim certificate for, receipt for, guarantee of, or warrant or right to subscribe to or purchase, any of the foregoing. La. R.S. § 51:702(15)(a) (2023) (emphasis added).

(1946) and, accordingly are deemed "securities" pursuant to state and federal securities law." Doc. 59-1, p. 18.

Plaintiffs claim that it is "well settled law" that LLC interests "in this context" are investment contracts under *Howey* is untenable. First, Plaintiffs buttress their proposition by citing—with the interlocutory signal "*see, e.g.,*"—the Fifth Circuit case *Meadaa v. Karsan*, 822 F.3d 202 (5th Cir. 2016). *Id.* The introductory signal, "*See, e.g.,*" is typically used to indicate that numerous sources indirectly support the proposition, which as Plaintiffs proposition offered here is that LLC interests are securities under federal and securities law. Doc. 59-1, p. 18. As of this Memorandum Ruling, *Meadaa* has been cited twice by courts and neither of which stand for the proposition that LLCs are securities.[2]

As to *Meadaa* itself, it involved purchasers of the Louisiana Hotel and Convention Center in Alexandria, Louisiana through a whole owned company. *Meadaa*, 822 F.3d at 204. Many of the purchasers' "colleagues had expressed an interest in participating in the project, so the [purchasers] decided to offer them a chance to invest." *Id.* At an investor presentation, the purchasers offered potential investors interests as either a "Private Debt" holder or an "Equity" holder. The purchasers stressed to potential investors that equity holders "would be members of a limited liability company that would own the Hotel." *Id.* The purchasers created an LLC, which they represented to the investors owned the hotel but in actuality the LLC never owned the hotel. *Id.* All the investors selected the equity option, purchasing fractional interests of twenty-eight units in the LLC for $125,000 each,

---

[2] *Broyles v. Commonwealth Advisors, Inc.*, 936 F.3d 324, 325 (5th Cir. 2019); *Creative Intellects Inc. v. Haygood*, No. 221CV02670RGKAGM, 2022 WL 3099734, at *5 (C.D. Cal. July 13, 2022).

totaling $3,500,000. *Id. Meadaa* does not stand for the proposition that it is well settled that LLC interests are security interests; they may in some instances but not in every case. Furthermore, the *Meadaa* Court's ruling does not mention *Howey*.

Second, Plaintiff does not attempt to apply the Howey test to "this context," which is necessary because "LLCs are particularly difficult to categorize under the securities laws . . . because they are hybrid business entities that combine features of corporations, general partnerships, and limited partnerships." *See, e.g.*, *Robinson*, 349 F.3d at 174. LLCs are noncorporate business entities that offer their members limited liability, tax benefits, and organizational flexibility." *Id.* at 168. Furthermore, "members in a member-managed LLC will often have powers too significant to be considered passive investors under the securities laws . . . while interests in manager-managed LLCs may often be securities." *Id.* at 174.

### A. Louisiana Courts apply the *Howey* Test

Sections 51:701, *et seq.* are modeled after the federal system, specifically, the Securities Act of 1933 and the Securities Exchange Act of 1934. *Ek v. Nationwide Candy Div., Ltd.*, 403 So. 2d 780, 785 (La. Ct. App. 3d Cir. 1981), *writ denied*, 407 So. 2d 732 (La. 1981). Therefore, to determine whether a particular transaction is an "investment contract" and thus a security under Section 51:701, Louisiana courts apply the *Howey* Test from *SEC v. W. J. Howey*, 328 U.S. 293 (1946). *TMJ Grp. LLC v. IMCMV Holdings Inc.*, 311 F. Supp. 3d 834, 856 (E.D. La. 2018); *Ek*, 403 So. 2d at 785–86.

In *Howey*, the Supreme Court stated that "an investment contract for purposes of the Securities Act means a contract, transaction or scheme whereby a person invests his

money in a common enterprise and is led to expect profits solely from the efforts of the promoter or a third party." *Howey*, 328 U.S. at 298–99. Under the Fifth Circuit's *Howey* test, "an investment contract qualifies as a security if it meets three requirements: (1) an investment of money; (2) in a common enterprise; and (3) on an expectation of profits to be derived solely from the efforts of individuals other than the investor." *E.g.*, *SEC. & Exch. Comm'n v. Arcturus Corp.*, 928 F.3d 400, 409 (5th Cir. 2019).[3]

### B. The *Howey* test applied to the purchase of A Plus

#### 1. Investment of Money

Here, the issue is whether the investor risked a financial loss by committing assets to the enterprise and whether the purchaser of the purported security was required to give up something of value in exchange. *See Howey*, 328 U.S. at 298–99. Here, Ghorab Surgical Associates, LLC, a sole-member LLC, purchased 100% of the LLC interest in A Plus on February 19, 2019, for $279,000,000.00 made payable in cash and by promissory note. Doc. 59-15, p. 1. Thus, the first *Howey* prong is satisfied.

#### 2. Common Enterprise

The second prong of the *Howey* test requires there to be a common enterprise, whereby the focus is on whether the profitability of an individual's investment is intertwined with the success or failure of other parties in the enterprise. For this prong, the focus is on the relationship between the investors and the promoter, wherein "the critical

---

[3] Some courts use a four-factor *Howey* Test to determine if a financial arrangement is an "investment contract" and thus a "security": "(1) an investment of money, (2) in a common enterprise, (3) with an expectation of a profit, and (4) reliance by the investor upon the efforts of others." Ek, 403 So. 2d at 786. The Court, however, will apply the Fifth Circuit's three prong *Howey* test, which merges prongs three and four.

inquiry is confined to whether the fortuity of the investments collectively is essentially dependent upon promoter expertise." *Long v. Shultz Cattle Co.*, 881 F.2d 129, 140 (5th Cir. 1989); *see Ek*, 403 So. 2d at 788 (concluding that the sale of the vending machines coupled with the guaranteed income policy constituted a common enterprise when the defendant company sought by widely circulated newspaper advertisement a number of persons to invest in a vending machine enterprise whereby each investor serviced his own machines, however, the money which they invested financed the essential managerial efforts undertaken in their behalf by defendant company, which ultimately determined the success or failure of the business enterprise).

  Here, A Plus was formed as a Louisiana LLC and solely owned by Donnie P, the seller, at all times prior to February 19, 2019. Doc. 59-3; doc. 59-15. The buyer, Dr. Ghorab as the sole member of Ghorab Surgical Associates, L.L.C. and a full-time physician/surgeon, purchased 100% of A Plus's member-managed LLC interests from Donnie P. Doc. 59-3, p. 6; doc. 59-10, p. 1. A Plus's articles of organization state that "there is no operating agreement in effect," which is typically written to establish the allocation of income, deductions, losses, and credits among the member interests. Doc. 59-3. Moreover, the February 19, 2019 purchase was neither a fractional purchase of LLC interest nor a pooling together of funds for sharing in profits and losses with other investors. Consequently, there is no common enterprise; the purchase of A Plus was for the entire membership interest, assets and liabilities, from one owner, Donnie P, to Ghorab Surgical Associates, L.L.C. Doc. 59-15, p. 1-2. This prong is not satisfied.

  3. ***Expectation of profits derived solely from the efforts of other***

Under the third prong of the *Howey* Test, the inquiry focuses on whether the investor provided consideration with the expectation of a profit or return on investment.[4] Also with the third prong, "the Supreme Court has endorsed relaxation of the requirement that an investor rely only on others' efforts, by omitting the word 'solely' from its restatements of the *Howey* test." *Robinson*, 349 F.3d at 170. In the Fifth Circuit, "[t]he proper inquiry . . . is whether 'the efforts made by those other than the investor are the undeniably significant ones, those essential managerial efforts which affect the failure or success of the enterprise.'" *Youmans v. Simon*, 791 F.2d 341, 345 (5th Cir. 1986) (quoting *Williamson v. Tucker,* 645 F.2d 404, 418 (5th Cir.), *cert. denied,* 454 U.S. 897 (1981)). Thus, the third prong is not satisfied if, at the time of the investment, the investor reasonably expects significant investor control, which requires a case-by-case analysis into the economic realities of the underlying transaction. *See Long*, 881 F.2d at 133, 136 ("It is axiomatic in federal securities law that in order to give effect to the remedial purposes of the Acts, substantive "economic realities" must govern over form.") (observing that it impossible to conclude that the "with profits to come solely from the efforts of others" prong of the *Howey* test is not satisfied without ignoring entirely the economic realities of publicly-offered cattle feeding partnership program).

---

[4] By profits, the Supreme Court means either capital appreciation resulting from the development of the initial investment, such as the sale of oil leases conditioned on promoters' agreement to drill exploratory well, or a participation in earnings resulting from the use of investors' funds, such as dividends on the investment based on savings and loan association's profits. In such cases the investor is attracted solely by the prospects of a return on his investment. By contrast, when a purchaser is motivated by a desire to use or consume the item purchased, such as to occupy the land or to develop it themselves, the securities laws do not apply. *United Hous. Found., Inc. v. Forman*, 421 U.S. 837, 852–53 (1975) (cleaned up).

In the context of situations involving partnerships, the Fifth Circuit applies the following *Williamson* factors to *Howey*'s third prong:

> (1) an agreement among the parties leaves so little power in the hands of the partner or venturer that the arrangement in fact distributes power as would a limited partnership; or (2) the partner or venturer is so inexperienced and unknowledgeable in business affairs that he is incapable of intelligently exercising his partnership or venture powers; or (3) the partner or venturer is so dependent on some unique entrepreneurial or managerial ability of the promoter or manager that he cannot replace the manager of the enterprise or otherwise exercise meaningful partnership or venture powers.

*Arcturus*, 928 F.3d at 410–11. Similar to general partners, owners of a sole member-managed LLCs "can guard their own interests with their inherent powers and do not need protection from securities laws—they can act on behalf of the [LLC]; bind [the LLC] by their actions; [and] dissolve the [LLC]." *Cf. Arcturus*, 928 F.3d at 410 (quoting *Youmans*, 791 F.2d at 346) (internal quotation omitted) (general partner's powers are analogous to single member LLC owner's powers; however, the latter's personal assets are shielded from any debts and liabilities incurred by the LLC whereas the former's are not). General partners and owners of sole member-managed LLCs are "entrepreneurs, not investors," of which "interests typically do not qualify as securities." *Cf. id.* (internal quotations omitted). Furthermore, "a litigant trying to prove otherwise must overcome the strong presumption that [the business interest] is not a security." *Id.* (quoting *Nunez v. Robin*, 415 F. App'x 586, 589 (5th Cir. 2011) (internal quotation omitted)).

   a. **The First *Williamson* Factor**

Under the first *Williamson* factor, to determine whether an arrangement deprives an investor of power, courts look to the legal documents setting up the arrangement and how

the arrangement functions to limit or serve as a barrier to the investor using his or her power. *Id.* Because *Arcuturs* involved a partnership not an LLC, comparing the LLC interests in *Robinson* to the instant matter is apposite. In *Robinson*, an investor purchased a partial interest in an LLC doing business in the telecommunications field brought suit against the LLC, its former chairman, the former chairman's technical services company, alleging securities fraud when the chairman sold him an interest in the LLC. 349 F.3d at 168. The investor asserted that he was merely a passive investor and thus the sale represented an investment contract and thus a security. *Id.* Under *Howey*, the court indicated that by "looking at the powers accorded [the investor] under [the LLC's] operating agreement, as well as [the investor's] activity as an executive at [the LLC], it is clear that [the investor] was no passive investor heavily dependent on the efforts of others." *Id.* at 170. The investor had the power to appoint board members to the board of managers, of which he was a member and vice-chairman, to select financial and legal consultants, to assemble an executive committee, and to vary the LLC's operating plan. Id. at 171. The court concluded that the investor had "a level of control antithetical to the notion of member passivity required to find an investment contract under the federal securities laws." *Id.* (internal quotations omitted).

  Here, in Plaintiffs Amended Complaint they claim that "[s]hortly after Dr. Ghorab's assumption of the management of A Plus, Dr. Ghorab began to discover that the business and prospects of A Plus had been grossly misrepresented and that Donnie P had failed to disclose material facts necessary in order to make the statements made to Dr. Ghorab, considering the circumstances under which they were made, not misleading." Doc. 61, p.

5. It is evident from the pleadings that Dr. Ghorab assumed management and took control over A Plus. Furthermore, Dr. Ghorab is the sole member of A Plus, a member-managed LLC. If an LLC's organizational documents indicate that the LLC is a member-managed LLC without centralized management, its interests resemble those of a general partnership and will typically not be considered to be securities. *See Youmans v. Simon*, 791 F.2d 341, 346 (5th Cir. 1986) ("[F]ederal securities laws are usually held not generally to apply to general partners."). Thus, Dr. Ghorab, as purchaser of 100% ownership interests in the member-managed LLC, A Plus, possessed undistributed formal power as evidenced by the lack of operating agreement, which resembles a level of authority even greater than the authority wielded by *Robinson* investor with his fractional interests in that LLC. *Cf. Robinson*, 349 F.3d at 171. In practice, Dr. Ghorab exercised his powers by assuming management of A Plus. See *Arcturus*, 928 F.3d at 413. In short, the distribution of power in the purchase of A Plus resembles nothing of a limited partner's interest because it singularly resides in the sole member-manager of the LLC, Ghorab Surgical Associates, L.L.C. which is owned solely by Dr. Ghorab who assumed management of A Plus after the purchase on February 19, 2019.

    b.  The Second *Williamson* Factor

"Generally, an interest in a partnership is more likely to be a security if it is sold to "inexperienced and unknowledgeable members of the general public." *Id.* at 417. Applying this standard to an LLC, Dr. Ghorab purchased A Plus through an LLC, Ghorab Surgical Associates, LLC, again, of which he is the sole member. Accordingly, the Court finds that his experience and knowledge is greater than a member of the general public. *See id.*

c. **The Third *Williamson* Factor**

The inquiry here "is whether the investors are so dependent on some unique entrepreneurial or managerial ability of the Managers that they cannot replace the manager of the enterprise or otherwise exercise meaningful partnership or venture powers." *Id.* at 422 (cleaned up). The Court need not look any further than the First Amended Complaint which shows that the sole investor and manager of A Plus are one in the same, Dr. Ghorab. Doc. 61, p. 5. ("Shortly after Dr. Ghorab and Ghorab Surgical Associate LLC's assumption of the management of A Plus . . . ."). Thus, all *Williamson* factors and a comparison to the LLC interests in *Robinson* indicate that Ghorab and Ghorab Surgical Associate LLC's interests purchased with A Plus resemble those of a general partner.[5]

4. **Howey *Test Summary***

The instant Motion calls the February 19, 2019 transaction and purchase of A Plus a sale of a limited partnership interest, doc. 59-1, p.6, then claims [t]here is no dispute that [A Plus] was a limited liability company," *id.* at 18, and then pitvots to its final claim that the transaction was a "STOCK SALE," *id.* (emphasis in original). Despite Plaintiffs mélange of business entity classifications, the articles of organization filed with the Louisiana Secretary of State, *see* Doc. 59-3, indicate that A Plus was sold as a sole member-managed LLC. Furthermore, the purchase was for 100% of the interest in A Plus, which means full control of ownership was transferred to Ghorab Surgical Associates, LLC, of

---

[5] Technically, there is no such thing as a single member partnership. Thus, the comparison between a single member LLC and general partner is illustrative of the level of control that a sole member-managed LLC owner possesses. And because all ownership interests reside in one member in a sole member-managed LLC, the rationale applied by the court in *Arcturus* applies here even more strongly.

which is owned solely by Dr. Ghorab. With the 100% ownership of A Plus, Dr. Ghorab therefore assumed full control of A Plus with all authority residing in him as the ultimate controlling interest holder. In addition to ownership, the pleadings patently state that Dr. Ghorab assumed management of A Plus. Doc. 61, p. 5. The filings with the Secretary of State reveal there is no operating agreement that accords power to anyone else other than the sole member-manger. Doc. 59-3. Thus, Dr. Ghorab role in A Plus at the time of purchase is not so much akin to a passive investor, *e.g.*, a limited partner with at least one general partner; rather, he is the sole member-manager of a single member LLC who assumed management and—as 100% owner—possess all authority to act on the behalf of A Plus. In all, the purchase of A Plus on February 19, 2019, was not a purchase of a common enterprise with the expectation of profits derived solely from the efforts of others. Consequently, the purchase of A Plus was neither the purchase of an investment contract nor a security under the *Howey* test, the 1933 Act, or Louisiana Blue Sky Law. *QED*.

Despite the broad remedial purpose behind the state and federal securities laws, they were not intended to provide a remedy for all fraud or misconduct arising out of commercial transactions. *See Youmans v. Simon*, 791 F.2d 341, 346 (5th Cir. 1986). Accordingly, Plaintiffs claims under Louisiana Revised Statutes sections 51:701, *et seq.* and the 1933 Act, Counts One and Two respectively, are stricken. Plaintiffs' other claims remain viable. The Court has reviewed Plaintiffs proposed Second Amended, Supplemental and Restated Complaint (Doc. 89-2) and that proposed pleading does not affect this Ruling.

### IV. CONCLUSION

For the aforesaid reasons,

**IT IS ORDERED** that Plaintiffs' Motion for Partial Summary Judgment on the Issue of Liability on Main Demand (Doc. 59) will be **DENIED.**

**IT IS FURTHER ORDERED** that Counts One and Two are stricken from the pleadings.

**THUS DONE AND SIGNED** in Chambers on this 21st day of March 2023.

_____
**JAMES D. CAIN, JR.**
**UNITED STATES DISTRICT JUDGE**